# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES

      vs.                                      CR No. 14-078-ML

JUAN ESPEJO SANCHEZ

## MEMORANDUM AND ORDER

Pending before the Court are several motions filed by Petitioner Juan Espejo Sanchez ("Petitioner" or "Espejo Sanchez"), proceeding *pro se*: a Motion to Set Aside and Vacate Sentence Pursuant to 2255 or in the Alternative Federal Rules of Criminal Procedure 60(b)(1)-(6) (Doc. #8) ("Motion"); a Supplemental Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #13) ("Supplemental Motion")[1] and Affidavit in support thereof (Doc. #14) ("Affidavit"), and a request, which the Court treats as a motion, for a ruling on the Motion to Vacate (Doc. #15) ("Motion for Ruling"). The Government has filed a response in opposition to the Motion (Doc. #12) ("Response to Motion"). No hearing is necessary.

## FACTUAL BACKGROUND AND TRAVEL

On June 9, 2014, Espejo Sanchez pled guilty to one count of conspiracy to possess with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.[2] He was sentenced to 72 months incarceration, followed by supervised

---

[1] Espejo Sanchez's motion for leave to amend the Motion was granted by text order on February 12, 2016.

[2] Espejo Sanchez and a co-defendant had previously been indicted based on the same facts in United States v. Espejo Sanchez, CR No. 13-32-ML (Doc. #16 in CR No. 13-32-ML). His plea in the above-

release for ten years.  Judgment entered on June 16, 2014.  Pursuant to the Plea Agreement, Espejo

Sanchez did not file a direct appeal.

Espejo Sanchez filed the instant Motion on June 2, 2015,[3] and, subsequently, the

Supplemental Motion and Motion for Ruling.

DISCUSSION

I.      Section 2255 and AEDPA

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited.  A court may

grant such relief only if it finds a lack of jurisdiction, a constitutional error, or a fundamental error

of law.  See United States v. Addonizio, 442 U.S. 178, 185 (1979)("[A]n error of law does not

provide a basis for collateral attack unless the claimed error constituted a fundamental defect which

inherently results in a complete  miscarriage of justice.")(internal quotation marks omitted).

Section 2255 states that:

(a) A prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed in
violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

28 U.S.C. § 2255(a).

In 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"),

which "imposed significant new constraints on proceedings under section 2255."  Trenkler v. United

---

captioned case resulted in the dismissal of that indictment. Plea Agreement (Doc. #2) at 1; Motion to Dismiss
(Doc. #67 in CR No. 13-32-ML).  Espejo Sanchez's plea in the earlier case was vacated. Response to Motion,
Ex. 2, Transcript of June 9, 2014 Hearing  (Doc. #12-2) ("6/9/14 Hrng. Tr.") at 12.

[3] The Motion, received by the Court on June 4, 2015, was mailed on June 2, 2015, and is deemed
filed on that date.  See Houston v. Lack, 487 U.S. 266, 276 (1988).

States, 536 F.3d 85, 96 (1st Cir. 2008)(footnote omitted).  "Some of these constraints were temporal; for example, AEDPA established a one-year statute of limitations for filing a section 2255 petition." Id. (citing 28 U.S.C. § 2255(f)).  Others were numerical, requiring a petitioner to obtain preclearance from the circuit court before filing a second or successive petition.  Id. (citing 28 U.S. § 2255(h)).

II.     Strickland

A defendant who claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel must demonstrate:

(1)     that his counsel's performance fell below an objective standard of reasonableness; and

(2)     a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88 (1984); United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010)(same).  In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690); see also Strickland, 466 U.S. at 689 (noting that the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ...").  To show prejudice under Strickland, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome."  Id. In making the prejudice assessment, the court focuses on the "fundamental fairness of the

proceeding." <u>Manon</u>, 608 F.3d at 131; <u>see also</u> <u>Strickland</u>, 466 U.S. at 696.  "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."  <u>Strickland</u>, 466 U.S. at 687; <u>see also</u> <u>Reyes-Vejerano v. United States</u>, 117 F. Supp. 2d 103, 106 (D.P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one.").  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  <u>Strickland</u>, 466 U.S. at 686.

The same principles apply in the context of guilty pleas.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985).  The <u>Hill</u> Court held that "the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel."  <u>Id.</u> at 58; <u>see also</u> <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 n.12 (2010)("In <u>Hill</u>, the Court recognized–for the first time–that <u>Strickland</u> applies to advice respecting a guilty plea.").  The first prong of the <u>Strickland</u> test is nothing more than a restatement of the standard of attorney competence described above.  <u>Hill</u>, 474 U.S. at 58.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words,  in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

<u>Id.</u> at 59.  The <u>Hill</u> Court reiterated that, as stated in <u>Strickland</u>, "these predictions of the outcome at a possible trial, where necessary, should be made objectively ...."  <u>Id.</u> at 59-60; <u>see also</u> <u>Padilla</u>, 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

III.    Analysis

A.      Motion and Supplemental Motion

Espejo Sanchez raises arguments under both the Fifth and Sixth Amendments to the United States Constitution.  First, he argues that the Court should set aside his guilty plea in the interest of justice for failing to allow him to represent himself.  Motion at 3.  Second, he contends that he received ineffective assistance of counsel .  Id. at 4; Supplemental Motion at 14.

1.      Failure to allow Espejo Sanchez to represent himself

Espejo Sanchez first argues that he was denied his Sixth Amendment right to "Self-Representation."  Motion at 3.  He states that he made numerous requests to represent himself, explaining why he chose to do so, which were all denied by the Court.  Id.

Espejo Sanchez bases his argument on Faretta v. California, 422 U.S. 806 (1975), in which the Supreme Court held that a state could not force counsel on a defendant who voluntarily and intelligently chooses to represent himself.  Id. at 807.  "It is well-settled that the Sixth Amendment encompasses a right to self-representation by criminal defendants."  United States v. Gomez-Rosario, 418 F.3d 90, 95 (1st Cir. 2005)(citing Faretta, 422 U.S. at 814-17).  The right to self-representation is not absolute, however.  "[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [associated with the right to counsel]."  Faretta, 422 U.S.  at 835 (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)).   A self-represented defendant must be able and willing to abide by rules of trial procedure and courtroom protocol. McKaskle v. Wiggins, 465 US. 168, 173 (1984); Faretta, 422 U.S. at 836.  Moreover, a court may appoint "standby counsel" to assist the defendant, McKaskle, 465 US. at 170; Faretta, 422 U.S. at 834 n.46, even if the defendant objects, Gomez-Rosario, 418 F.3d at 99.

"[A] defendant's invocation of the right to self-representation must be contained in

'unequivocal language.'" United States v. Robinson, 753 F.3d 31, 42 (1st Cir. 2014)( quoting

United States v. Woodward, 291 F.3d 95, 109 (1st Cir. 2002)).  The Court of Appeals for the First

Circuit has further stated that:

> [W]hen a defendant seeks to proceed pro se the trial judge must determine whether
> the defendant's waiver is intelligent and competent.   In discharging this
> responsibility, the trial judge must keep in mind the strong presumption against
> waiver and investigate as long and as thoroughly as the circumstances of the case
> before him demand.  As part of the inquiry into whether the defendant's waiver is
> intelligent, the trial judge must warn the defendant of the dangers and disadvantages
> of self-representation, so that the record will establish that [the defendant] knows
> what he is doing and his choice is made with eyes open.

United States v. Francois, 715 F.3d 21, 30 (1st Cir. 2013)(second alteration in original)(internal

citations and quotation marks omitted); see also Robinson, 753 F.3d at 42 ("Before allowing pro se

representation ... a trial judge must make sure that certain prerequisites have been satisfied because

an individual who undertakes self-representation is at a significant disadvantage compared to

someone defended by counsel.").

There are several problems with Espejo Sanchez's argument.  First, it appears that he sought

to represent himself in CR No. 13-32-ML, not in the case currently before the court.  On May 20,

2013, Espejo Sanchez filed a Motion to Appoint New Counsel (Doc. #21 in CR No. 13-32-ML).

Subsequently, on September 3, 2013, he filed a Motion for a Change of Counsel (Doc. #35 in CR

No. 13-32-ML).  Both motions were denied after hearing.  See Docket in CR No. 13-32-ML.  Espejo

Sanchez filed no motions with respect to counsel in the instant matter.  See Docket in CR No. 14-78-

ML.

In addition, although he included a request in the alternative to proceed pro se in the second

motion, Espejo Sanchez did not press that argument at the hearing on the motion, Response to

Motion, Ex. 1, September 23, 2013, Hearing Transcript (Doc. #12-1) ("9/23/13 Hrng. Tr.").

Therefore, it cannot be said that Espejo Sanchez's "invocation of the right to self-representation" was "contained in unequivocal language." Robinson, 753 F.3d at 42 (internal quotation marks omitted). Further, the Court was denied the opportunity to make a determination as to whether any potential waiver of the right to counsel would have been knowingly, intelligently, and competently made. See id. at 43; Francois, 715 F.3d at 30.

Lastly, Espejo Sanchez's current claim appears to be a case of "sour grapes." In his Motion for a Change of Counsel, Espejo Sanchez argued that:

> In this case now before this Court, Counsel has not entertained any pre-trial motions; nor hired an investigator to look into the very serious issue of an illegal search and seizure matter that the defendant has been trying to question his Counsel about since day one in this case, and a host of other matters as well ....

Mot. for Change in Counsel. At the hearing on the motion, Espejo Sanchez brought up the search and seizure of the vehicle, asserting that he had a valid basis to challenge it. 9/23/13 Hrng. Tr. at 2. Two exchanges are particularly relevant to the issue of self-representation. After asking Espejo Sanchez if he had discussed the search and seizure issue with counsel and receiving an affirmative response, the Court stated:

> THE COURT:     And has she told you that she does not believe you have a valid basis for the filing of such a motion?
>
> THE DEFENDANT:     Yes, your Honor.
>
> THE COURT:     And what legal training do you have that makes you a better judge of whether or not you have such a legal basis for that motion?
>
> THE DEFENDANT:     Well, none, your Honor.
>
> THE COURT:     So what's the point?

9/23/13 Hrng. Tr. at 2-3. After admitting that the car belonged to his co-defendant, Doneri Sandoval, the Court advised Espejo Sanchez that he could not assert Mr. Sandoval's rights. Id. at 6. Espejo

Sanchez continued to press the issue:

> THE DEFENDANT:     Well, there could be other ways we can -- I don't know.
>
> THE COURT:     That's the problem, Mr. Espejo.  You don't know.  You're trying to play lawyer, and you're not very good at it.

Id.  The Court subsequently stated:

> THE COURT:     [I]f what you have is a disagreement about whether or not you've got these Fourth Amendment issues, which you've already admitted you're not a trained attorney, she has probably already spoken to you about that. ...

Id. at 11.

Espejo Sanchez raises the search and seizure again in the instant Supplemental Motion, as part of his ineffective assistance of counsel claim.  See Supplemental Motion at 26; see also Discussion section A.2. at 13-14.  Strickland's caution that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence ...," 466 U.S. at 689, appears to apply not only to Espejo Sanchez's dissatisfaction with counsel for failing to make a groundless argument, but also to his dissatisfaction with the Court's refusal to grant his motions for new counsel.

To the extent Espejo Sanchez sought to represent himself (although, as noted previously, the record does not reflect that Espejo Sanchez pursued the matter strenuously,  other than the reference in the Motion for a Change of Counsel), there was no unequivocal, knowing, and intelligent waiver of his right to counsel.  In short, he was not denied his right to self-representation.  Accordingly, his first ground for relief is rejected.

2.     Ineffective assistance of counsel

Espejo Sanchez next claims that he received ineffective assistance of counsel.  He alleges that

a conflict of interest existed between his counsel and the prosecution.  Motion at 4.  Additionally, he faults counsel for: (1) failing to wait for an expert's report before advising him to plead guilty; (2) failing to timely object to illegally obtained evidence; (3) failing to adequately investigate the evidence in the case; and (4) failing to file a motion requesting a downward departure based on his minimal participation.  Supplemental Motion at 13-14.  Several of these grounds were raised–and rejected–at the September 23, 2013, hearing on his Motion for a Change of Counsel.

Espejo Sanchez's conflict of interest claim is based on the fact that his court-appointed counsel and the Assistant United States Attorney prosecuting his case had previously worked together as state prosecutors.  Motion at 4.  At the June 23, 2013, hearing on his Motion for Change in Counsel in CR No. 13-32-ML, the Court clearly found the allegation to be meritless:

> THE DEFENDANT:     Well, I also believe there's a conflict of interest because of --
>
> THE COURT:     What's that?
>
> THE DEFENDANT:     -- my attorney's association with the prosecution in the past.
>
> THE COURT:     What's that?
>
> THE DEFENDANT:     They worked together for the State before.
>
> THE COURT:     Really?  You're going to go there?

(9/23/13 Hrng. Tr. at 10-11).

In Cuyler v. Sullivan, 446 U.S. 335 (1980), a case involving multiple representation, the Supreme Court stated that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to gain relief."  Id. at 349-50.  The Court, however, held that "the possibility of conflict is insufficient to impugn a criminal

conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must

establish that an actual conflict of interest adversely affected his lawyer's performance."  Id. at 350;

see also id. ("But until a defendant shows that his counsel actively represented conflicting interests,

he has not established the constitutional predicate for his claim of ineffective assistance.").  The

Strickland Court reiterated this principle.  466 U.S. at 692.

Espejo Sanchez has not made the required showing.  He simply states that "[t]here was a[]

great conflict of interest between the court appointed lawyer and the USA prosecutor in Mr. Sanchez

case because the lawyer and [t]he prosecutor ha[d] worked together as state prosecutors."  Motion

at 4.  He has not demonstrated that his counsel actively represented conflicting interests or that an

actual conflict of interest adversely affected counsel's performance in this case.  See Cuyler, 466

U.S. at 350.  At best he has raised the possibility of a conflict, which is insufficient to show

ineffective assistance of counsel.  See id.

Espejo Sanchez next argues that counsel was ineffective for failing to wait for an expert's

report before advising him to plead guilty.  Supplemental Motion at 18-21.  The report at issue was

that of a Court-ordered handwriting analysis conducted by the United States Secret Service on two

letters and a handwriting exemplar provided by Espejo Sanchez[4] and two letters of unknown

authorship.  Supplemental Motion, Ex. A (Doc. #13-1) at 5-6.  The report concluded that, based on

the information available, Espejo Sanchez probably had not written the letters.  Supplemental Motion

at 20; id., Ex. A at 6.  Espejo Sanchez argues that, had he known the results of the analysis prior to

---

[4] The report noted that the letters were submitted as a known non-requested writing of Espejo Sanchez but that, after analysis and comparison of the letters and the Court-ordered handwriting exemplar it was determined that the two exhibits were not written by the same person.   Supplemental Motion, Ex. A at 6.

pleading guilty, there is a reasonable probability that he would not have accepted the Government's plea offer.  Supplemental Motion at 21.  Further, as a result of counsel's failure to request an extension in order to obtain the expert report, Sanchez contends, his plea was not knowingly and voluntarily entered because it was based on insufficient evidence and bad advice.  Id. at 21, 23-24.

The problem with Espejo Sanchez's argument, as before, is that it appears to be premised on his guilty plea in CR No. 13-32-ML, the predecessor of the instant case, see n.2, not his plea in this case.  The Court reaches this conclusion based, in part, on Espejo Sanchez's reference to a motion to withdraw his guilty plea, which was filed in CR No. 13-32-ML (Doc. #49 in CR No. 12-32-ML).  Supplemental Motion at 20.[5]  No motion to withdraw guilty plea was filed in the matter presently before the Court.  Moreover, the report is dated November 6, 2013, Supplemental Motion, Ex. A at 1, after Espejo Sanchez pled guilty on October 31, 2013, in CR No. 13-32-ML but before his guilty plea in CR No. 14-78-ML was entered on June 9, 2014, undermining his argument that, but for counsel's failure to seek an extension, he would not have pled guilty, Supplemental Motion at 20.  Espejo Sanchez makes no argument that counsel was ineffective in negotiating the plea in CR No. 14-78-ML.

As part of its questioning of Espejo Sanchez about his understanding of the Plea Agreement at the June 9, 2014, change of plea and sentencing hearing in this case, the following exchange occurred:

> THE COURT:   Now, paragraph 1(b) says that you're going to file a motion to vacate your previously entered plea of guilty to that Indictment, which is 1[3]-032.  Do you see that?

---

[5] The motion was based on the same arguments Espejo Sanchez currently makes, that the guilty plea was not entered into voluntarily, intelligently, and knowingly and without having been provided with evidence which was exculpatory in nature.  Motion to Withdraw Guilty Plea at 1.

THE DEFENDANT:     Yes, your Honor.

THE COURT:     And, actually, you can make an oral motion to that effect. Since I know that it's part of the plea agreement in this case, I'll be granting that. You understand that?

THE DEFENDANT:     Yes, your Honor.

THE COURT:     So it's like that plea never happened.

THE DEFENDANT:     Okay.  Yes, your Honor.

THE COURT:     Do you understand that?

THE DEFENDANT:     Yes.

THE COURT:     Okay.  And the Government has agreed that it will consent to my vacating that earlier plea on the Indictment.  Do you understand that?

THE DEFENDANT:     Yes, your Honor.

THE COURT:     Again, once I grant that motion, it's like that never happened.  And so that the only matter before me is this new charge of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine ....

6/9/14 Hrng. Tr. at 11-12; Plea Agreement at 1.  Pursuant to the Plea Agreement, the Government

filed a motion to dismiss the Indictment in CR No. 13-32-ML the day of the plea and sentencing

hearing in CR No. 14-78-ML.  Plea Agreement at 1; Motion to Dismiss (Doc. #67 in CR No. 13-32-

ML).

It is clear from the foregoing passage that the plea regarding which Espejo Sanchez

complains that he received ineffective assistance is a nullity.  6/9/14 Hrng. Tr. at 12 ("it's like that

plea never happened").  Therefore, there is no relief which the Court can grant with respect to this

portion of Espejo Sanchez's ineffective assistance of counsel claim.  The Court cannot vacate a

guilty plea which has already been vacated to an Indictment which has been dismissed.  Moreover,

counsel cannot be found to be ineffective for actions relating to negotiating a plea which was withdrawn.

Espejo Sanchez further alleges that counsel was ineffective for failing to "investigate the evidence upon which Petitioner would enter a plea." Supplemental Motion at 26. Espejo Sanchez states that "[f]irst and foremost, defense counsel did never investigate whether or not the law enforcement agents were provided with the search warrant or a verbal consent, requisite '*sine qua non*' to conduct[] the search of the vehicle where the charge drug was seized." Id. Espejo Sanchez also frames this portion of the claim as a failure on counsel's part to object to "illegally obtained evidence." Id. at 13.

As noted above, Espejo Sanchez raised the topic of the search warrant at the September 23, 2013, hearing:

> THE COURT:    What you're saying now is that you think you have a valid basis to challenge a search and seizure; is that right?

> THE DEFENDANT:    Yes, your Honor.

> THE COURT:    And you've discussed that with your lawyer?

> THE DEFENDANT:    Yes, I did.

> THE COURT:    And has she told you that she does not believe you have a valid basis for the filing of such a motion?

> THE DEFENDANT:    Yes, your Honor.

9/23/13 Hrng. Tr. at 2. Later in the hearing, Espejo Sanchez returned to the search and seizure issue:

> THE DEFENDANT:    Okay. Well, regarding the matter of the warrantless search, I did a little bit of research on my own, your Honor; and I have Chapman v. United States where a hotel clerk did not give consent to search a room; as in this case, the owner of Chip's, I believe that's the name, where the Government says that they gave consent for the vehicle to be searched.

THE COURT:     I don't understand what you're saying.

THE DEFENDANT:     What I'm saying is that the warrantless search of the vehicle that was conducted by the agents, they didn't have a warrant to search the vehicle.

They asked permission from the owner of the establishment to search the vehicle. The owner did not have authority to give consent to search the vehicle. That was my argument.

THE COURT:     Whose car was it?

THE DEFENDANT:     Mr. Sandoval's.

THE COURT:     Well, then you can't assert Mr. Sandoval's rights.

Id. at 5-6.

In Strickland, the Supreme Court stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. A particular decision not to investigate must be assessed for reasonableness considering all the circumstances, "applying a heavy measure of deference to counsel's judgments." Id. Clearly, counsel's decision here not to investigate the validity of the warrant was reasonable, given Espejo Sanchez's lack of standing to challenge the search and seizure. Counsel is not required to engage in futile arguments or file frivolous motions. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999)(citing United States v. Wright, 573 F.2d 681, 684 (1st Cir. 1978))("Obviously counsel's performance was not deficient if he declined to pursue a futile tactic."); United States v. Cabrera, No. 99-1607, 2000 WL 227937, at *1 (1st Cir. Feb. 18, 2000)(unpublished table decision; text available in Westlaw)(citing Vieux, 184 F.3d at 64 ("Cabrera's first ineffective assistance of counsel claim fails because the substantive argument clearly would not have succeeded."); Dure v. United States, 127 F. Supp. 2d 276, 280 (D.R.I. 2001)("Counsel cannot be deemed ineffective for failing to pursue futile arguments.").

-14-

In addition to the search warrant issue, Espejo Sanchez claims generally that defense counsel failed to investigate the case adequately.  Supplemental Motion at 24, 26.  According to Espejo Sanchez, he "has identified potential exculpatory evidence as well as additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly."  Id. at 26.

Presumably, the "exculpatory evidence" to which Espejo Sanchez refers are recordings of phone calls he made from the Bristol County House of Correction.[6]  Id. at 29.  He asserts that counsel "relied on the prosecution to investigate the personal phone calls made by Petitioner when he was in immigration custody and failed to subpoena the phone calls which were important evidence."  Id. at 29-30.

The issue of the phone calls also came up at the September 23, 2013, hearing.  Espejo Sanchez stated that he had received calls he made to the Mexican Embassy but not personal calls, including to his co-defendant, and argued that the calls were important to his defense.  9/23/13 Hrng. Tr. at 8-9.

> THE COURT:     So you want the recordings from the prison of your phone calls with your friends?
>
> THE DEFENDANT:     Right.  Yes, your Honor.
>
> THE COURT:     To prove what?  I mean, if you're going to go to trial and

---

[6] Espejo Sanchez focuses his argument on the supposedly missing phone calls.  Supplemental Motion at 29-30.  In his original Motion, Espejo Sanchez also mentions counsel's alleged failures to "subpoena court documents" and "interview witnesses."  Motion at 4.  He does not identify what court documents he believes counsel should have sought or what witnesses she should have interviewed, nor does he elaborate on these topics in his Supplemental Motion.  Accordingly, the Court declines to address them.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir, 1990)("It is not enough merely to mention a possible argument in the most skeletal way ...."); see also id. (noting "settled appellate rule" that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); Robinson, 753 F.3d at 41 (citing Zannino, 895 F.2d at 17).

you think that those are going to be helpful --

      THE DEFENDANT:    Yes, your Honor.

      THE COURT:    -- we can subpoena those.

      THE DEFENDANT:    Okay.  Yes, I mentioned that to my attorney that I need those phone calls so I could --

      THE COURT:    Well, you don't get them.  You subpoena them for trial.

Id. at 9.  Counsel stated:

      MS. LARSEN:    Your Honor, I've given him all the phone calls that I have which is contained in the discovery.
      The phone calls that my client's referring to may not exist.  They may not have been recorded.  The Government may not be in possession of those phone calls.

      THE COURT:    Right.  Now, that's a different story, Mr. Espejo.  If you want phone calls that you made from the prison, first you've got to find out whether they were recorded.  That's not discovery.
      And if you think it's going to help you somehow in your defense, Ms. Larsen can check to see whether those recordings exist and she can subpoena them.
      But you can certainly tell her what the substance of those conversations was.  You don't need the recordings to do that.

Id. at 10.

The Court makes two observations based on the above.  First, the case never went to trial but, rather, ended when Espejo Sanchez entered a plea in the instant matter.  Therefore, the need to subpoena the recordings of the phone calls, if they existed, never arose.  Second, Espejo Sanchez has provided the Court with no information as to the substance of the conversations.  The Court, therefore, cannot conclude that the phone calls were somehow exculpatory.  Counsel was not ineffective for failing to obtain phone calls which were not necessary and the content of which Espejo Sanchez apparently had not disclosed to her.  See Dure, 127 F. Supp. 2d at 279-80.

Finally, Espejo Sanchez faults counsel for failing to move for a downward departure pursuant

-16-

to §3B1.2(a) of the United States Sentencing Guidelines ("U.S.S.G.") based on his "minimal" role

in the conspiracy.  Supplemental Motion at 31.  According to Espejo Sanchez, because he was in

custody when all of the charged overt acts took place and had no knowledge of his co-defendant's

actions, he "must be" less culpable than his co-defendant.  Id. at 32.  Espejo Sanchez states that:

> In the current case, there were two separated conspiracies: The first one, in which
> Petitioner attempted to conspire with Sandoval and the [cooperating witness] but did
> nothing in furtherance of the conspiracy, was done as soon as 1) Petitioner did not
> find any source of supply of drug, including the supposed drug in Atlanta, and 2) a
> fortiori, when Petitioner became incarcerated for a driving offense.  And the second
> conspiracy, the one with Sandoval started when Petitioner was already locked-up,
> contacting and getting drugs from California.

Id. at 33.

> Section 3B1.2 provides that:

> Based on the defendant's role in the offense, decrease the offense level as follows:

>> (a) If the defendant was a minimal participant in any criminal activity,
>> decrease by **4** levels.

>> (b) If the defendant was a minor participant in any criminal activity, decrease
>> by **2** levels.

> In cases falling in between (a) and (b), decrease by **3** levels.

U.S.S.G. §3B1.2.  Application Note 3(A) states that "[t]his section provides a range of adjustments

for a defendant who plays a part in committing the offense that makes him substantially less culpable

than the average participant."  U.S.S.G.  §3B1.2, cmt. (n.3(A)).  A "minimal participant" is a

defendant "who [is] plainly among the least culpable of those involved in the conduct of a group."

Id. (n.4).  "Under this provision, the defendant's lack of knowledge or understanding of the scope

and structure of the enterprise and of the activities of others is indicative of a role as minimal

participant."  Id.  A "minor participant" "is less culpable than most other participants, but whose role

could not be described as minimal." Id. (n.5).  The Commentary to §3B1.2 further states that "[t]he determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  Id. (n.3(C)).

It is Espejo Sanchez's burden to prove his entitlement to a role adjustment.  United States v. Vargas, 560 F.3d 45, 50 (1st Cir. 2009); United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004).  In order to qualify as a minimal participant, "a defendant must prove that he is among the least culpable of those involved in the criminal activity. ...  "[T]his entails proof that he is substantially less culpable than his cohorts in the actual offense and that he is substantially less culpable than the vast majority of those taking part in similar crimes."  Santos, 357 F.3d. at 142; see also id. ( "In short, a defendant must be a plainly peripheral player to justify his classification as a minimal participant.").  The First Circuit stated that "[t]his standard is hard to meet and, accordingly, it will be the rare case in which a defendant will warrant designation as a minimal participant."  Id. A defendant seeking a minor role adjustment "must show, by a preponderance of the evidence, that he was less culpable than both his confederates and the mine-run of other wrongdoers who have committed similar crimes."  Vargas, 560 F.3d at 50-51.

Espejo Sanchez has not shown that he is entitled to an adjustment as a minimal participant in the conspiracy.  As noted above, he argues that because he was incarcerated three weeks prior to his co-defendant's arrest, his role in the offense "must be" minimal.  Supplemental Motion at 31; see also id. at 32 ("Petitioner must be, under all the circumstances, less culpable than his co-defendant.").  Although Espejo Sanchez acknowledges that "a lower-level co-conspirator's comparison of his actions with the actions of the conspiracy's leader is generally unpersuasive ...,"

id. at 31 (citing <u>United States v. Garcia-Ortiz</u>, 657 F.3d 25, 29-30 (1st Cir. 2011)), that is exactly

what he is trying to do here, <u>see</u> <u>id.</u> ("In the current case the simple comparison would be more than

enough to persuade both the Court and the Government about the role played by Petitioner in the

charged conspiracy."). The First Circuit in <u>Garcia-Ortiz</u> rejected a similar argument. The court

stated:

> To be sure, the defendant attempts to minimize his role by comparing himself to the
> ringleader of the group. This comparison amounts to little more than whistling past
> the graveyard. The fact that some other accomplice may be more culpable than the
> defendant does not necessarily mean that the defendant's role in the offense is minor.

<u>Garcia-Ortiz</u>, 657 F.3d at 29-30; <u>see also</u> <u>Vargas</u>, 560 F.3d at 51 ("A defendant who participates in

only one phase of a conspiracy may nonetheless be found to play a non-minor role in the conspiracy

as a whole."). Further, Espejo Sanchez has made no argument here that he was less culpable than

the average participant in the criminal activity. <u>See</u> Supplemental Motion at 31-34.

At the June 9, 2014, hearing, the Government summarized the evidence, which detailed

Espejo Sanchez's role in the conspiracy, which it would present if the case were to go to trial. 6/9/14

Hrng. Tr. at 25-28. Espejo Sanchez admitted his involvement in the conspiracy as the Government

had described it. <u>Id.</u> at 29. The Court accepted his guilty plea. <u>Id.</u> at 29-30. The Court then asked

defense counsel if she was pressing an objection she had originally made to the PSR in CR No. 13-

32-ML, specifically to a two-level adjustment for Espejo Sanchez being an organizer, leader, or

manager of the conspiracy. <u>Id.</u> at 30-31. Counsel responded that she was, arguing that Espejo

Sanchez could not have been a ringleader or organizer by virtue of his incarceration at the time the

drugs were seized. <u>Id.</u> at 31. The Government agreed that the two-level increase should not be

included at that time. <u>Id.</u> at 31-32. Espejo Sanchez's guideline range was adjusted downward by

two levels, to 35, which, with a Criminal History Category ("CHC") of III,[7] resulted in a guideline range of 210-262 months incarceration.  Id. at 32.  Counsel did not seek a further reduction.

The Government recommended a sentence of 180 months, or fifteen years, incarceration. Id. at 33.  Defense counsel requested a variance to an offense level of 23 so that the Court could impose the mandatory minimum sentence of five years to serve.  Id. at 41.  The Court sentenced Espejo Sanchez to a term of incarceration of 72 months, or six years, followed by a ten year term of supervised release with a special condition that Espejo Sanchez remain out of the United States.  Id. at 46.  The Court made the following observation:

> THE COURT:   Mr. Sanchez, this has been a long road.  You need to thank your lawyer and the Government lawyer because without their good and hard work on your behalf, you would have been going to jail today for at least ten years.
> As I say, Mr. Daly gave you a gift today.  I gave you a gift today.  Your lawyer negotiated all of that for you.
>
> ....

Id. at 48.

The plea agreement negotiated in the instant case resulted in the dismissal of the indictment in CR No. 13-32-ML and a decrease in the mandatory minimum sentence from ten to five years incarceration.  Counsel's successful objection to the original PSR resulted in a decrease in Espejo Sanchez's offense level and a corresponding decrease in his guideline range.  Thus, Espejo Sanchez has already benefitted from an adjustment for his role in the conspiracy, albeit not what he seeks here.  Espejo Sanchez's ultimate sentence was well below the guideline range and below the Government's recommendation.  Clearly counsel's performance did not fall "below an objective standard of reasonableness."  Strickland, 466 U.S. at 688; see also id. ("The proper measure of

---

[7] Espejo Sanchez did not object to the CHC.  6/9/14 Hrng. Tr. at 32.

attorney performance remains simply reasonableness under prevailing professional norms.").

Espejo Sanchez argues that "[i]n applying the second part of the Strickland test ... it appears that, assuming there were these failures in advocacy, when the Court examine[s] in the light of the whole record, they will turn out to be more than sufficient to justify setting aside Petitioner's conviction or correcting sentence." Supplemental Motion at 17. The Court has found that there were no "failures in advocacy;" therefore, the Court need not address the prejudice prong of Strickland. Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)(citing Strickland, 466 U.S. at 697)("A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong."). Even if it did, however, counsel's efforts resulted in a far better outcome for Espejo Sanchez, as seen above. He was not prejudiced by any perceived failures on counsel's part.

Espejo Sanchez has not shown either that his counsel's performance fell below an objective standard of reasonableness or that, but for any alleged errors on counsel's part, he would have rejected the plea and gone to trial. The Court, therefore, rejects Espejo Sanchez's ineffective assistance of counsel claim in its entirety.

B.      Motion for Ruling

Espejo Sanchez's Motion for a Ruling is DENIED as moot.

<u>CONCLUSION</u>

Espejo Sanchez has not demonstrated that he was denied his right to represent himself or that he received ineffective assistance of counsel in these proceedings. Further, he is not entitled to relief pursuant to Fed. R. Crim. P. 60(b).

For the foregoing reasons, the Motion is DENIED and DISMISSED.

-21-

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts (§ 2255 Rules), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Espejo Sanchez has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Espejo Sanchez is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.  <u>See</u>  § 2255 Rule 11(a).

§2255

SO  ORDERED:


<u>/s/ Mary M. Lisi</u>
Mary M. Lisi
Senior United States District Judge


Date: January 24, 2017